IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| JULIE TRIPP CAPPELMANN, | ) | C/A No. 2:15-CV-02217-MGL-MGB |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| CAROLYN W. COLVIN, | ) | REPORT AND RECOMMENDATION |
| Acting Commissioner of | ) | |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

      This case is before the court for a Report and Recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B). The Plaintiff, Julie Tripp Cappelmann, brought this action pursuant to Section 205(g) of the Social Security Act, as amended, (42 U.S.C. Section 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security Administration regarding her claim for disability insurance benefits ("DIB") under Title II of the Social Security Act. For the reasons stated herein, the undersigned recommends that the Commissioner's findings be affirmed.

## ADMINISTRATIVE PROCEEDINGS

      The Plaintiff applied for DIB on January 29, 2013, and was 58 years old on her alleged disability onset date of December 24, 2012. (R. 160.) The Plaintiff claimed disability due to borderline personality disorder, clinical depression, fibromyalgia, drug addiction, anemia, high blood pressure, and stomach ulcers. (R. 199.) The Plaintiff's application for DIB was denied initially and on reconsideration. The Plaintiff requested a hearing, which was held on April 2,

1

2014, before an Administrative Law Judge ("ALJ").  The ALJ issued her decision on August 29, 2014, and it is now the Commissioner's final decision for purposes of judicial review.  (R. 14-30.)  The Plaintiff filed an appeal to the Appeals Council but was denied review. (R. 1-5.)  In making the determination that the Plaintiff was not entitled to benefits, the Commissioner adopted the following findings of the ALJ:

> (1)   The claimant meets the insured status requirements of the Social Security Act through September 30, 2017.
>
> (2)   The claimant has not engaged in substantial gainful activity since December 24, 2012, the alleged onset date (20 CFR 404.1571 *et seq*.).
>
> (3)   The claimant has the following severe impairments: fibromyalgia, degenerative disc disease, bilateral knee osteoarthritis, obesity, depression disorder not otherwise specified, and borderline personality disorder(20 CFR 404.1520(c)).
>
> (4)   The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> (5)   After careful consideration of the entire record, and after consideration of the claimant's severe and non-severe impairments, individually and in combination, I find that the claimant has the residual functional capacity of lifting and/or carrying 50 pounds occasionally and 25 pounds frequently; with standing and/or walking about six hours total in an eight-hour workday; with sitting about six hours total in an eight-hour workday; with no climbing of ladders, ropes, or scaffolds; limited to frequent climbing of stairs or ramps; and limited to frequent balancing; stooping, kneeling, crouching, and crawling; limited to unskilled work; with no team-type interaction with co-worker; and no interaction with the public.
>
> (6)   The claimant is unable to perform any past relevant work (20 CFR 404.1565).
>
> (7)   The claimant was born on September 20, 1954, and was 58 years old, which is defined as an individual of advanced age, on the alleged disability onset date (20 CFR 404.1563).
>
> (8)   The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

> (9)    Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
> (10)    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.  (20 CFR 404.1569 and 404.1569(a)).
>
> (11)    The claimant has not been under a disability, as defined in the Social Security Act, from December 24, 2012, through the date of this decision (20 CFR 404.1520(g)).

(R. 14-30.)

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). "Disability" is defined in the Act as the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than" twelve months. *See* 42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, the Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Administration's official Listing of Impairments found at 20 C.F.R. Part 4, Subpart P, Appendix 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful employment.  *See* 20 C.F.R. § 404.1520.  If

an individual is found not disabled at any step, further inquiry is unnecessary. *See* 20 C.F.R. § 404.1520(a)(4); *see also Hall v. Harris*, 658 F.2d 260 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if she can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. *See* SSR 82-62, 1982 WL 31386, at *3. The plaintiff bears the burden of establishing her inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5). She must make a *prima facie* showing of disability by showing that she is unable to return to her past relevant work. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983); *see also Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).

Once an individual has established an inability to return to her past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. *See Grant*, 699 F.2d at 191. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *See id.* at 191-92.

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner "are supported by substantial evidence and whether the correct law was applied." *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *see also Richardson v. Perales*, 402 U.S. 389 (1971); 42 U.S.C. § 405(g). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. *Pyles v. Bowen*, 849

F.2d 846, 848 (4th Cir. 1988) (citing 42 U.S.C. § 405(g); *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "substantial evidence" is defined as:

> such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Substantial evidence consists of more than a mere scintilla of evidence but may be less than a preponderance.

*Smith v. Chater*, 99 F.3d 635, 637-38 (4th Cir. 1996) (internal quotation marks and citations omitted). Thus, it is the duty of this Court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that her conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## **DISCUSSION**

1. **The ALJ's Assessment of Fibromyalgia in the RFC finding**

The Plaintiff argues that the ALJ failed to "understand the true nature of fibromyalgia" and erred by failing to grant the Petitioner's disability claim in the absence of objective findings. (Dkt. No. 9 at 4.) The Plaintiff's contends that the ALJ erred by not finding the Plaintiff to be credible and placing too great an emphasis on the absence of objective medical evidence. (*Id.* at 8.) "The determination of whether a person is disabled by pain or other symptoms is a two-step process." *Craig v. Chater,* 76 F.3d 585, 594 (4th Cir.1996).

> First, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged.... It is only after a claimant has met her threshold obligation of showing by objective medical evidence a medical impairment reasonably likely to cause the pain claimed, that the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work, must be evaluated.

5

*Craig*, 76 F.3d at 593, 595.  Factors relevant to assessing a claimant's symptoms apart from objective medical evidence include "daily activities," "[t]he location, duration, frequency, and intensity of…symptoms," and "[t]he type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your…symptoms."  20 C.F.R. § 404.1529(c)(3). The court "cannot make credibility determinations," but must "review the ALJ's decisions for substantial evidence."  *Johnson v. Barnhart*, 434 F.3d 650, 658 (4th Cir. 2005).

In the case at bar, the ALJ followed the two-step process as required by *Craig* and her decision is supported by substantial evidence.  The ALJ acknowledged that fibromyalgia was a severe impairment. (R. 16.) The ALJ found that the Plaintiff had medically determinable impairments to support some the Plaintiff's symptoms, but that the Plaintiff's "allegations concerning her impairments, symptoms, and ability to work are not substantiated by the total evidence of record and are not fully credible." (R. 26.) At the hearing before the ALJ, the Plaintiff testified that she performed daily activities including loading the dishwasher, sweeping, laundry, cooking with a microwave, and going to the movies. (R. 27.) The ALJ found the Plaintiff's self-imposed limitations lack the support of objective medical evidence. (*Id.*) The ALJ noted discrepancies between the Plaintiff's testimony at the hearing and what she had told a counselor regarding why she left her last employment. (*Id.*)  "Although a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment…." *Craig*, 76 F.3d at 595.

The ALJ's decision reviewed and analyzed the pertinent medical evidence to support her finding that the Plaintiff was not fully credible.  The ALJ noted that the Plaintiff received

conservative treatment for her symptoms and that the treatment was generally effective. (R. 28.) Since the alleged onset date, the Plaintiff had visited the emergency room twice and only one of those visits resulted in her admission to the hospital. (*Id.*) The ALJ noted that the Plaintiff alleges debilitating musculoskeletal pain, but consistently told her treating physicians that she was not in distress or did not have a significant musculoskeletal limitation. (*Id.*)

The ALJ's findings are supported by substantial evidence in the record. While the medical records indicate that Plaintiff went to the emergency room numerous times since the late 1990's (R. 250-426), only two of those visits were after the alleged onset date. (R. 489-500; 581-590.) The first of those visits related to suicidal thoughts caused by family stress and financial problems. (R. 490.) The second visit was classified as being the result of an "accident other," and the final diagnosis was "multiple contusions." (R. 581; 586.) The Plaintiff first reported her fibromyalgia in May 2012 and the fibromyalgia did not require treatment at that time.[1] (R. 474.) The Plaintiff never regularly took any medication for her fibromyalgia. (R. 45-46; 469.) The Plaintiff testified that her treatment providers wanted to prescribe her narcotic painkillers, but she did not take them because she did not like how they made her feel. (R. 45-46.)

The Plaintiff presented to her treating physicians only three times with complaints of fibromyalgia and was never referred to or seen by a specialist. (R. 469-88; 558-76.) None of her treating physicians recommended any significant restrictions on her activities. (R. 28.) Her primary care physicians did not note symptoms that would support a more restrictive RFC. Their notes show she had a full range of motion in her knees; intact cranial nerves; normal sensation;

---

[1] "As a matter of law, diagnosis of an impairment does not alone determine the ultimate issue of disability; there must be a showing of related functional loss." *Murdock v. Colvin*, No. 5:14-CV40-RJC-DSC, 2014 WL 9866441, at *4 (W.D.N.C. Nov. 19, 2014), *report and recommendation adopted,* No. 5:14-CV-40-RJC-DSC, 2015 WL 3540787 (W.D.N.C. June 3, 2015) (quotation and citation omitted).

normal peripheral pulses; a negative Homan's sign; no cyanosis, clubbing, or edema in her extremities; no tenderness, swelling, or redness in her knees; and no musculoskeletal tenderness. (R. 470; 472; 474-76; 478; 558-59; 565; 567; 570-71; 573; 576.)

The record shows that the Plaintiff cared for her pets and cared for her personal needs independently (Tr. 212-13.) She could cook and prepare meals for herself, sweep the floor, and load the dishwasher (Tr. 41-42; 74; 213.) She went to a pizza restaurant for dinner once a month with a friend without difficulty (Tr. 74), and occasionally went to the movies with her roommate. (Tr. 42.) She did not use an assistive device to walk. (Tr. 74.) She could shop in stores, pay bills, count change, and handle a savings account (*Id*.) Plaintiff read and watched television daily (R. 215.) She talked on the phone with her children and mother. (*Id.*) She reported a "fine" ability to follow written and spoken instructions. (Tr. 216.) Plaintiff also told the consultative examiner that she performed daily living activities independently. (Tr. 623.) The record contains substantial evidence to support the ALJ's decision.

2. **The ALJ's Assessment of the Opinion of Pravin R. Patel, M.D.**

The Plaintiff argues that the ALJ erred by assigning "great weight to Dr. Patel's actual clinical findings" but "little to some weight" to Dr. Patel's assessment of the Plaintiff's functional limitations. (Dkt. No. 9 at 10-17.) The ALJ is charged with evaluating all medical opinions received. The ALJ must weigh opinions in light of a broad range of factors, including the examining relationship, the nature and extent of the treatment relationship, supportability of the opinions in the medical record, consistency, and whether the treating physician was a specialist. 20 C.F.R. § 404.1527(c)(1)-(5). The ultimate determination of disability is left to the Commissioner. 20 C.F.R. § 404.1527(d).

8

Dr. Patel examined the Plaintiff as part of her disability claim (R. 21.) He was not a treating physician. (*Id.*) The ALJ gave specific and legitimate reasons for giving Dr. Patel's opinion "little to some weight." This court is not permitted to use its own judgment in the place of the ALJ. The ALJ systematically analyzed the findings made by Dr. Patel and stated the reason she agreed or disagreed with that finding. The ALJ was thorough and concise.

The ALJ first noted that the severity of the symptoms that the Plaintiff reported to Dr. Patel were worse than the severity that she had reported to any of her treating physicians. (R. 21.) The ALJ discussed that the symptoms that she reported to Dr. Patel, such as losing her words mid-sentence and loss of bowel control, were never reported to any other doctors and were not supported by any objective medical evidence. (*Id.*)

The ALJ concluded that Dr. Patel's opinion was internally inconsistent and inconsistent with his exam. (R. 22.) The ALJ noted that Dr. Patel stated that the Plaintiff could not sit, stand, or walk for the duration of an eight hour workday yet found that she could occasionally lift/carry fifty pounds and frequently lift/carry twenty pounds. (*Id.*) Likewise, the ALJ noted that despite the weight she could occasionally and frequently lift/carry, Dr. Patel opined that she should never stoop, kneel, crouch or crawl. (*Id.*)

The ALJ noted that Dr. Patel's functional limitations of the Plaintiff were inconsistent with his own clinical findings. (R. 22.) Dr. Patel's report indicated that the intact cranial nerves, intact cerebellar signs, down going toes, equal reflexes, and no gross motor or sensory deficit. (R. 624.) She had full range of motion and 4/5 motor power in her arms and legs. (*Id.*) She exhibited straight leg raising to 50 degrees in the supine position and to 90 degrees in the sitting position. (*Id.*) She could bend forward to touch her toes, but could not reach them. (*Id.*) She got on and off the examination table without assistance. (*Id.*) She performed tandem walking and

heel-and-toe-walking slowly with external support. (*Id.*)  The ALJ concluded that Dr. Patel's limitations of the Plaintiff were not consistent with Dr. Patel's own physical examination of the Plaintiff. (R. 22.)  The ALJ noted that none of the Plaintiff's treating physicians suggested that the Plaintiff had functional restrictions. (R. 27.)  The ALJ gave "significant weight" to the opinions of four state agency medical consultants because their opinions were supported by objective medical evidence. (R. 28.)   This court does not find any error with the weight given by the ALJ to Dr. Patel's opinion in light of the internal inconsistencies pointed to by the ALJ and in comparison with the record as a whole.

The Plaintiff argues that Dr. Patel's functional limitations of the Plaintiff must be given more weight because he was the only examining physician to render such an opinion. (Dkt. No. 9 at 15.)  The Plaintiff does not cite to any law requiring the ALJ to accept Dr. Patel's opinion solely because he was the only physician that both examined the Plaintiff and gave an opinion. The ALJ properly analyzed Dr. Patel's opinion in accordance with 20 C.F.R. § 404.1527.  The ALJ's RFC is consistent with the four state expert consultants' opinions with additional limitations added by the ALJ. (R. 63-66; 77-81.)  This court finds that the weight given by the ALJ to Dr. Patel's opinions of the Plaintiff's residual functional capacity is supported by substantial evidence.

## **RECOMMENDATION**

Wherefore, based upon the foregoing, the court recommends that the Commissioner's decision be **AFFIRMED**,

IT IS SO RECOMMENDED.

July 22, 2016

Charleston, South Carolina

_____
MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE